IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JO L. MOORE                                                                                    PLAINTIFF

       v.             Civil No. 04-2248

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff Jo L. Moore brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB), supplemental security income benefits (SSI), and Disabled Widow's Benefits (DWB), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423, § 1602 of Title XVI, 42 U.S.C. § 1381a, and §§ 202(e) and 223 of Title II, 42 U.S.C. §§ 402(e) and 423, respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural & Factual Background**

The plaintiff filed her application for DIB, SSI, and DWB on October 22, 2002, alleging an onset date of May 15, 1999. (Tr. 14, 63, 100.) The applications were initially denied (Tr. 25-26, 29-33) and that denial was upheld upon reconsideration (Tr. 27-28, 38-39). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 40-44.)

On November 19, 2003, a hearing was held by the ALJ. The plaintiff was represented by a non-attorney representative at this hearing. (Tr. 203.) The ALJ issued a partially favorable

ruling on January 21, 2004, deciding that the plaintiff was entitled to a period of disability and DIB, SSI, and DWB, but beginning no earlier than May 13, 2003 and running through at least the date of the decision. (Tr. 20-21.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 8), which denied that request on September 10, 2004 (Tr. 407); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed her complaint with this court on November 10, 2004, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court. (Docs. 4, 5.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 2.)

Plaintiff was 57 years of age at the time of the hearing. She completed 10th grade and did not start 11th grade due to marriage. She was trained in cosmetology, but due to allergies, she never worked in that field. For nine years prior to quitting her job, plaintiff worked as a post machine operator sewing shoes. (Tr. 204-205.) She frequently carried boxes of shoes, and those boxes would weigh about 25 pounds. (Tr. 206-207.) Her job required her to sit most of the day. (Tr. 207-208.)

Plaintiff testified that she quit working on May 15, 1999 because pain in her shoulders would keep her awake at night, she could not see to thread her needle, and she suffered pain in her arms. (Tr. 209-210.) Plaintiff also testified about suffering from migraine headaches since 1976, for which she has taken several medications and at the time of the hearing was taking Duradin. While working, she had migraine headaches several times a month, however since quitting work the frequency has dropped to less than one or two a month. (Tr. 213-214.) In addition to pain in her arms and shoulders, plaintiff testified that her hands go numb, she perspires excessively, she has regular headaches, and she suffers from allergies and asthma that

require her to use an inhaler approximately every four hours. (Tr. 216-217.) Plaintiff testified to having difficulty gripping with her hands and is unable to remove lids from jars. (Tr. 219.) During the day, plaintiff now watches her "little grandbaby" a couple of hours each day and does "a little bit of family history." She does normal housework, but she must "take [her] time to do it." (Tr. 218.)

A vocational expert (VE) testified that plaintiff's previous work as a stitcher was a semi-skilled job that is done at the light level of exertion. Skills from that job are transferable to other jobs in leather and fabric machines such as sewing of garments with no particular modification in the application of skill. (Tr. 222-223.)

The ALJ presented the following hypothetical to the VE:

> ALJ: [W]e'll have an individual who's a female born July 16, 1946, is currently 57 years of age, and has a limited education. Assuming a person with this vocational profile and the following limitations . . . who could lift and carry ten pounds occasionally and five pounds frequently but not on a sustained basis due to shoulder pain. Pushing and pulling would be the same. The individual could stand and walk for up to six hours of an eight-hour workday, and could sit for up to six hours of an eight-hour workday. And as far as postural and manipulative limitations, the individual cannot work above shoulder level with either arm. Okay. Given just these limitations, could such an individual perform the past relevant work you've identified for the Claimant?
> VE: No.
> ALJ: Are there any other jobs in the national economy that such a person could perform on a sustained basis?
> VE: No, because under the hypothetical this person's unable to perform sedentary work on a sustained basis.

(Tr. 223.)

The ALJ noted that he was looking at an onset date of sometime in early 2003, instead of the plaintiff's alleged onset date in 1999. (Tr. 224.)

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

Further, the ALJ may discredit subjective complaints which are inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir.1993). The law on this issue is clear. Under *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir.1984)*,* "an ALJ must look at five factors when determining the credibility of a claimant's subjective allegations of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Harris v. Shalala*, *45 F.3d 1190, 1193 (8th Cir.1995)*; *see also Baker v. Sec. of HHS,* 955 F.2d 552, 555 (8th Cir.1992). The ALJ must "discuss" these factors in the hearing decision. *Herbert v. Heckler*, 783 F.2d 128, 131 (8th Cir.1986)*(citing Polaski v. Heckler,* 751 F.2d 943, 948-950 (8th Cir.1984)). Consideration must also be given to all the evidence presented related to the claimant's prior work history, and the observations of non-medical third parties, as well as treating and examining physicians related to the above matters.

AO72A
(Rev. 8/82)

20 C.F.R. § 416.929; Social Security Ruling 96-7p; *Polaski v. Heckler,* 751 F.2d 943 (8th Cir.1984)(subsequent history omitted).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d at 1322.

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987). The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988).

Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, 783 F.2d at 130 (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

In summary, the ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan,* 939 F.2d 560, 565 (8th Cir.1991) ("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when

-6-

making credibility determinations"); *Herbert v. Heckler*, 783 F.2d at 131 (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

Residual functional capacity is what a plaintiff can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the plaintiff's description of his limitations. *Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir.2001); *see also*, *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir.1995); 20 C.F.R. §§416.945(a).

"Nonexertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." *Asher v. Bowen,* 837 F.2d 825, 827 n. 2 (8th Cir.1988). Examples include "mental, sensory, or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions." *Id.; See* 20 C.F.R., Pt. 404, Subpart P, Appendix 2, §§200.00(e).

When a plaintiff suffers from exertional and nonexertional impairments, as here, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the plaintiff's work capacity. *Thompson v. Bowen,* 850 F.2d 346, 349 (8th Cir.1988). If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled. *Id.* That is to say, "an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Id.* at 349-50. The United States Court of Appeals for the Eighth Circuit has

-7-

explained as follows:

> In this context, "significant" refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the Guidelines, however persistent nonexertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled.

*Id.* at 350. *See also*, *Holz v. Apfel,* 191 F.3d 945, 947 (8th Cir.1999); *Foreman v. Callahan,* 122 F.3d 24, 26 (8th Cir.1997); *Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir.1997).

**Discussion**

In this case, the plaintiff contends that the instant matter should be remanded because the ALJ erred: (1) in failing to utilize the VE, who was present at the hearing, regarding plaintiff's pre-2003 light RFC determination, (2) in using the medical-vocational guidelines, or "grids," to determine that plaintiff, upon reaching the age of 55, had transferable skills, and (3) in the severity analysis in that the ALJ failed to make an express severity determination, failed to use the correct legal standard, failed to find plaintiff's migraines and pulmonary disorder severe, and failed to combine plaintiff's impairments, and (4) in the pre-2003 RFC determination. (Doc. 4.)

Since the ALJ determined that plaintiff was disabled as of May 12, 2003, the issue before the court is whether the ALJ erred in the determination that the plaintiff was not disabled from the alleged onset date of May 15, 1999 until May 12, 2003. Here the record is replete with references to plaintiff's migraine headaches (Tr. 72, 74, 75, 76, 77, 106, 117, 143, 152, 148, 146, 174), tendinitis (Tr. 72, 77, 86, 87, 89, 117, 150, 146), difficulties with breathing (Tr. 72, 74, 77, 78, 86, 92, 106, 109, 110, 111, 112, 115-120, 136, 139, 152, 150, 153, 154, 159, 174, 191), and complaints of pain in her shoulders (Tr. 72, 86, 87, 89, 98, 106, 107, 136, 139, 152, 146, 159,

174, 177, 178, 179, 181, 182, 183, 184, 189, 193, 196, 199).

The ALJ in his decision discredits many of plaintiff's complaints of pain, pointing to plaintiff's "extensive list of capabilities concerning activities of daily living as reported as recently as October 2002." (Tr. 17.) What the ALJ fails to note, however, is that the plaintiff also stated that when she does these chores and activities, such as making beds, vacuuming, bending over, lifting her arms, washing her hair, peeling potatoes, and washing dishes, she suffers pain. (Tr. 87.) Also she stated that when she does her daily chores, she is only able to "do a little then ha[s] to rest." (Tr. 89.) At the hearing, the plaintiff noted that there wasn't much housework to be completed because she lived alone. (Tr. 218.) While the ALJ relies upon the plaintiff's written, form statements concerning the activities she is able to do, he does not develop the record as to the extent of her ability to perform these tasks, or at what points in time during the relevant period that these tasks were performed.

The plaintiff makes reference at her hearing before the ALJ that her sister is helping to pay for her medications (Tr. 215-216), and Dr. Tackett comments on October 10, 2003 that the plaintiff requests a conservative course of treatment because of the financial restraints of surgical procedures and her desire not to go further into debt (Tr. 199). Also, at the hearing the plaintiff's testimony suggests that the reason for the lack of medical records concerning her conditions and treatment is because she lost her medical insurance when she had to quit work, and thus she would not go to the doctor "unless [she] was almost dead." (Tr. 215.) The ALJ finds that the record does not contain objective medical evidence to support plaintiff's claims as to the severity of her pain. (Tr. 18.) Further, the ALJ determined that the plaintiff "did not experience a debilitating decrease in her ability to perform work-related activities or that the claimant's

condition was not one requiring more than conservative measures to control." (Tr. 19.) The ALJ fails to evaluate plaintiff's financial situation to determine if that in any significant way prevented her from seeking other medical treatments or more frequent medical care during the relevant time period. Treatment an indigent person cannot afford is no more a cure for her condition than if it had never been discovered. To a poor person, a medicine that she cannot afford to buy does not exist. *Dover v. Bowen,* 784 F.2d 335, 337 (8th Cir.1986); *Benson v. Heckler,* 780 F.2d 16, 18 (8th Cir.1985).

Finally, the ALJ states that Dr. Tackett's RFC determination is "objectively unsubstantiated." (Tr. 18.) The ALJ notes that plaintiff "sought little more than routine follow up care" which indicated that plaintiff's condition "was limited somewhat from her alleged onset date until May 13, 2003, but not such that she would not have been able to perform a great deal of activity." (Tr. 19.) Also, the ALJ "considered the administrative findings of fact made by the State agency medical physicians and other consultants." (Tr. 19.) The treating physician's findings and conclusions constitute substantial evidence which must be carefully weighed by the ALJ and the Commissioner. Unless there is medical evidence that contradicts or refutes the physician's medical conclusion, the Commissioner is *bound* to treat the treating physician's diagnosis and conclusion as substantial evidence.[1] *Morse v. Shalala* 16 F.3d 865, 872 -873 (8th Cir.1994), *citing Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)*; see also Whitney v.*

---

[1] This approach is consistent with Social Security Regulations that grant controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. *See* 20 C.F.R. § 416.927(d)(2) (1993) (effective Aug. 1, 1991); *Nelson v. Sullivan,* 966 F.2d 363, 367-68 (8th Cir.1992) (recognizing that "the new regulation merely codifies this circuit's law regarding the opinions of treating physicians").

AO72A
(Rev. 8/82)

*Schweiker,* 695 F.2d 784, 789 (7th Cir.1982) ("If the ALJ concludes that a treating physician's evidence is credible, therefore, he should give it controlling weight in the absence of evidence to the contrary because of the treating physician's greater familiarity with the plaintiff's conditions and circumstances.") While the ALJ here finds that Dr. Tackett's determinations are objectively unsubstantiated, he fails to indicate what medical evidence contradicts those conclusions.

**Conclusion:**

Accordingly, the ALJ's decision denying DIB, SSI, and DWB from the alleged onset date of May 15, 1999 until May 13, 2003 to the plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for reconsideration, to include a more through analysis of plaintiff's subjective complaints and nonexertional limitations, as well as a review of whether plaintiff's financial status limited the treatment she sought during the relevant time period.

DATED this 21st day of March 2006.

                                                                        **/s/ Beverly Stites Jones**
                                                                       _____
                                                                       HON. BEVERLY STITES JONES
                                                                       UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)